UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNDAY COSMANO, | ) |
| Plaintiff, | ) |
| | ) No. 17 C 569 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| STATE OF ILLINOIS LOTTERY, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Sunday Cosmano worked as a lottery sales representative for Defendant State of Illinois Lottery (the "Lottery) until the Lottery terminated her for poor performance and unbecoming conduct at the Des Plaines Lottery office on December 28, 2015. Before her termination, in 2009, Cosmano filed complaints against her then-supervisor, Jeff Allan, asserting that he winked at her and came on to her. Cosmano subsequently filed this lawsuit against the Lottery, alleging retaliation based on sex harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. The Lottery has now moved for summary judgment on Cosmano's claim [88].[1] Because no reasonable juror could conclude that the alleged sexual harassment caused the Lottery to terminate Cosmano's employment years later, Cosmano's retaliation claim cannot survive summary judgment.

---

[1] The Lottery filed its memorandum in support of the motion for summary judgment, statement of undisputed facts, and some supporting exhibits under seal, also providing redacted versions. If the Court refers to a sealed document, it attempts to do so without revealing any information that could be reasonably deemed confidential. Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

## BACKGROUND

**I.     Preliminary Matters**

As an initial matter, the Court must address Cosmano's compliance with the Court's summary judgment procedures. This Court's summary judgment procedures differ from Local Rule 56.1, in that this Court requires the parties to submit a joint statement of undisputed facts. Judge Sara L. Ellis, Case Procedures, Summary Judgment Practice, https://www.ilnd.uscourts.gov/judge-info.aspx?VyU/OurKKJRDT+FUM5tZmA==; *see Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment procedures). The party opposing summary judgment may submit additional facts it contends demonstrate a genuine issue of material fact in its response, providing citations to supporting material. Judge Ellis, Summary Judgment Practice.

Here, Cosmano did not participate in drafting a joint statement of undisputed facts, despite the Court providing her with additional time to do so after new counsel entered an appearance on her behalf. Cosmano's non-participation prompted the Lottery to file its own separate statement, accompanied by a declaration explaining why it filed the statement without Cosmano's participation. *See* Doc. 91. Then, in connection with her response, Cosmano filed a response to the Lottery's statement of facts, admitting the majority of the statements but at times denying the statements and adding additional facts of her own. *See* Doc. 99. To support her denials and additional facts, Cosmano filed a number of exhibits, including an affidavit in which she attempts to clarify some of her deposition testimony.[2]

---

[2] The Lottery does not argue that the Court should strike Cosmano's affidavit because it contradicts her deposition testimony. *Cf. James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("[T]he sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."). Therefore, the Court does not consider whether the sham affidavit rule applies to Cosmano's affidavit.

The Lottery asks the Court to deem its statement of facts admitted based on Cosmano's failure to comply with the Court's summary judgment procedures and to disregard any additional assertions of fact that Cosmano included in her response. Because the Court's procedures are not advisory and Cosmano failed to abide by them, the Court finds it appropriate to treat the Lottery's facts as established. *See* N.D. Ill. LR 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, that noncompliance [with the court's summary judgment procedures] meant that the district court could exercise its discretion to accept Kreg's statements of fact as undisputed."); *Sweatt*, 796 F.3d at 711–12 (affirming this Court's summary judgment case management procedures as conforming to Local Rule 56.1). As for Cosmano's additional facts, the Court will consider them to the extent they actually create a disputed fact and are appropriately presented and supported, ignoring any statements that rely solely on hearsay evidence.

## II.   Facts[3]

### A.   Cosmano's Employment

Cosmano worked as a lottery sales representative ("LSR") from 1990 until December 28, 2015, when the Lottery terminated her employment. As an LSR, Cosmano serviced businesses and accounts that held a lottery license in a specific territory. Her duties included visiting lottery accounts on a regular basis to provide sales and promotional support, as well as discussing matters with lottery retailers, problem solving issues, answering questions, passing out

---

[3] The Court derives the facts in this section from the Lottery's Statement of Undisputed Material Facts and the additional facts submitted by Cosmano in response, as discussed above. The Court includes in this background section only those facts that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court takes all facts in the light most favorable to Cosmano, the non-movant.

dispensers, returning instant lottery tickets and lottery ticket books, and updating marketing materials.

Cosmano received a negative performance review for the period of January 1, 2007 to December 31, 2007, which indicated that she failed to meet all objectives set out by the Lottery and needed improvement in the categories of productivity, quality, initiative, use of time, planning, follow-up, and human relations. She also received a negative performance review for the period of January 1, 2008 to December 31, 2008. That review indicated similar issues, including improvements needed in the categories of job knowledge, productivity, quality, initiative, use of time, planning, follow-up, and human relations. As a result of these reviews, on September 11, 2009, the Lottery placed Cosmano on a work improvement plan. Cosmano subsequently received similar negative performance reviews for the following periods: January 1, 2010 to January 1, 2011; January 1, 2012 to January 1, 2013; and January 1, 2013 to January 1, 2014. Cosmano, however, notes that she received awards and bonuses from the Lottery for her performance. In April 2014, the Lottery terminated Cosmano's employment but subsequently reinstated her pursuant to an arbitration order in September 2015.

### B. Alleged Sexual Harassment

On July 17, 2009, employees of the Lottery's Office of Internal Investigations began an investigation based on a report by Jeff Allan, Cosmano's then-supervisor, that Cosmano was making statements to other Lottery employees that he was winking at her. Cosmano alleged that Allan had winked at her and propositioned her on numerous occasions. On July 23, 2009, investigators spoke with Cosmano and Allan. Allan stated that he believed that the statements began immediately after Allan wrote Cosmano up for failure to comply with the directive to

clean her state vehicle. In a case report dated August 24, 2009, the investigation concluded that Allan's conduct did not rise to the level of sexual harassment.

The following year, on June 30, 2010, Michael Gedzun, the Chief Inspector for the Lottery, began another investigation after Allan complained that Cosmano made harmful statements about him and other Lottery employees, including that Allan had again been winking at her and had made advances towards her, among other things. Gedzun interviewed Cosmano during the investigation, who stated that Allan had not winked at her for twelve or thirteen months and that she did not have any issues with Allan. At the conclusion of the investigation, on March 25, 2011, the Lottery suspended Cosmano for ten days based, in part, on her harmful statements toward other Lottery employees. In September 2011, Allan left the Lottery to work for a private company.

### C. December 2015 Incident

In the fall of 2015, Cosmano's supervisor and a lottery regional coordinator, Marybeth Muir, advised Cosmano to stay away from the Lottery's Des Plaines office after Muir heard that Cosmano had smeared feces on a bathroom wall there. Nonetheless, on December 1, 2015, Cosmano went to the Des Plaines Office. That morning, Tommie Turner, another Lottery employee, observed Cosmano walk quickly out of the office and take a stutter step. Turner then heard a soft "plop," after which she observed a small amount of what looked to be fresh human feces on the floor. Doc. 94 ¶ 32. Turner picked the substance up with paper and confirmed from the smell and feel that it was, in fact, feces. Turner notified a security guard and also learned of additional feces found along the route of Cosmano's departure from the office. Turner then notified Muir, Ernest Scarpelli, the facility manager for the Des Plaines office, and Gedzun. Scarpelli also observed feces in the Des Plaines office and hallway between the Lottery waiting

area and Lottery payout windows. Scarpelli photographed the feces and sent copies to Gedzun, who then, in turn, forwarded e-mails memorializing these observations to the Lottery's Chief of Staff, Jayme Odom, and its Human Resources Manager, Lydia Mills.

On December 3, 2015, the Lottery held a pre-disciplinary meeting with Cosmano in response to her conduct on December 1, 2015. On December 17, 2015, the Lottery requested Cosmano's termination for conduct unbecoming an employee in violation of the Illinois Department of Revenue Employee Handbook based on her reported actions in defecating on the floor of the Des Plaines office. On December 28, 2015, the Lottery terminated Cosmano from her position in light of her prior disciplinary record, work history, and her inappropriate conduct on December 1, 2015.

### D. EEOC Charges

Cosmano filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2016, complaining of sex discrimination and retaliation. The EEOC dismissed Cosmano's charges and issued her a notice of right to sue on November 1, 2016. This lawsuit followed.

### LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine

dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

The Lottery argues that Cosmano cannot succeed on her claim that, by firing her in December 2015, it retaliated against her for reporting Allan's alleged sexual harassment that occurred in 2009.[4] To succeed on her retaliation claim, Cosmano must establish that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between her protected activity and the adverse action. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). The Lottery challenges only the third element of Cosmano's retaliation claim.

---

[4] In her response, Cosmano argues that the adverse action at issue is not solely the December 2015 termination but rather all of her negative performance reviews and other disciplinary actions since 2009. But in ruling on the Lottery's motion to dismiss in this case, the Court found that Cosmano's retaliation claim only encompasses her December 2015 termination, with other alleged acts of retaliation serving only as background evidence. Doc. 17 at 4. As such, Cosmano cannot now expand her claim to include these other instances, and the Court only considers whether she can show retaliation in connection with her termination.

Cosmano's retaliation claim requires but-for causation, meaning "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The Court must consider the entirety of the evidence to determine whether a causal link exists between her protected activity and termination. *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017) (applying *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), to retaliation claim). Cosmano may establish a causal link through an admission of discriminatory animus or "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015).

Initially, the Lottery argues that Cosmano lacks evidence of a causal connection because too much time passed between her complaint of sexual harassment in 2009 and her termination in 2015 to allow for an inference of causation based on suspicious timing. Indeed, "the passage of time can weaken and eventually break an inference of causation," with the Seventh Circuit noting that "generally the timing is not suspicious when there is a long gap between the protected activity and the adverse employment action." *Baines v. Walgreen Co.*, 863 F.3d 656, 665 (7th Cir. 2017). Because Allan left the Lottery in 2011, it is hard to suggest that any animosity he might have had toward her contributed to her termination in 2015. But a long gap between protected activity and the adverse employment action will not automatically defeat a causal connection if additional, sufficient circumstantial evidence of causation exists. *Id.* ("[W]hen there is a long gap between a protected activity and an adverse employment action, a plaintiff cannot support her causal connection solely with evidence of 'suspicious timing.' Additional evidence is necessary."); *Hicks v. Forest Pres. Dist. of Cook Cnty.*, 677 F.3d 781, 789 (7th Cir.

8

2012) ("[T]here are no bright-line rules to apply when considering the temporal proximity of adverse actions to protected activities because it is a fact-intensive analysis.").

Cosmano argues that she does not only rely on suspicious timing and instead has presented sufficient evidence to allow a jury to find that the Lottery's stated reasons for terminating her lack credence. Here, the Lottery represents that it terminated Cosmano based on her chronic deficient performance and inappropriate conduct in allegedly smearing feces on a bathroom wall and then subsequently defecating on the floor of the Des Plaines office on December 1, 2015. Because the Lottery "has presented non-retaliatory reasons for [its] conduct, the true question is whether the proffered reasons were pretext for retaliation." *Burton v. Bd. of Regents*, 851 F.3d 690, 697 (7th Cir. 2017). "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, and so long as the employer honestly believes those reasons, pretext has not been shown." *Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016) (citation omitted). Cosmano can "demonstrate pretext directly by showing that 'a discriminatory reason more likely motivated' [her] termination, or indirectly by showing that [the Lottery's] explanations are 'unworthy of credence.'" *Senske v. Sybase*, 588 F.3d 501, 507 (7th Cir. 2009) (citation omitted). In determining whether an employer's explanation is honest, courts look to the reasonableness of the explanation. *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 492 (7th Cir. 2008); *see also Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.").

Cosmano contends that she was an exceptional employee who received awards and bonuses from the Lottery, suggesting this evidence would support finding that the Court should not give credence to Lottery's view of her work. But Cosmano's belief that she performed her

9

job adequately does not affect the analysis because the Court instead considers the employer's belief. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 715–16 (7th Cir. 1017) ("Lauth's belief that he was performing his job adequately is not relevant to the question of whether Covance believed it had a legitimate, non-discriminatory basis to terminate him."); *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 839 (N.D. Ill. 2017) (finding plaintiff could not create an issue of fact by claiming he was performing adequately or challenging his supervisors' assessment of his performance). Further, even if the Lottery inaccurately assessed her performance, this would not matter. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) (in "discussing the nature of the pretext inquiry, [the Court has] stated that it is not enough for a plaintiff to show that his employer's explanation was based on an inaccurate assessment of its employee's performance"); *Walker v. Glickman*, 241 F.3d 884, 890 (7th Cir. 2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the employee] presented sufficient evidence that [the employer's] reason was a lie for the action it took."). Rather, "[t]he proper inquiry mandates looking at [Cosmano's] job performance through the eyes of her supervisors at the time of her suspension and termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008); *see Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of [her] termination.'" (alteration in original) (citation omitted)). And here, the record shows that Cosmano continuously received negative performance reviews, including her most recent one in 2014. Although Cosmano contends that she only began receiving negative reviews after she complained about Allan's purported conduct in 2009, she did in fact receive similar negative

10

reviews in both 2007 and 2008. And while Cosmano might have considered herself to be good at her job and may have received bonuses as a result of her performance at some point, "[i]nconsistent performance—though not uniformly bad—is a legitimate, non-retaliatory reason for termination." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 580 (7th Cir. 2015); *see Roberts v. Separators, Inc.*, 172 F.3d 448, 451–52 (7th Cir. 1999) ("poor performance" was a genuine, nondiscriminatory reason where the plaintiff's "performance declined after an initial period of excellence"). More importantly, Cosmano has not presented any evidence that would suggest that the Lottery did not honestly believe that she failed to live up to its legitimate job expectations, and so she has not created a question of fact as to whether this stated reason was pretextual.

Further, the Lottery terminated Cosmano because of her inappropriate workplace conduct in defecating on the floor of the Des Plaines office in December 2015. While Cosmano argues that this was a manufactured incident, the record does not include any evidence from which a juror could infer that the Lottery did not believe that Cosmano had engaged in this behavior. *See Seymour-Reed v. Forest Pres. Dist.*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness."); *O'Connor v. DePaul Univ.*, 123 F.3d 665, 671 (7th Cir. 1997) ("On the issue of pretext, [the Court's] only concern is the honesty of the employer's explanation."). Although Cosmano may believe that her actions did not warrant termination, the Court does not sit as a "super personnel department that second-guesses employer's business judgments." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citation omitted) (internal quotation marks omitted); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014) ("This court has repeatedly stated that it is not a super-personnel department that second-guesses employer policies that are facially

legitimate. . . . A court cannot interfere because an employer's decision is unwise or unfair."). Because Cosmano has failed to provide any evidence that would suggest that her complaints in 2009 caused her termination, she cannot prevail on her retaliation claim and the Court must enter judgment for the Lottery on her complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Lottery's motion for summary judgment [88] and enters judgment for the Lottery on Cosmano's complaint. Case terminated.

Dated: November 1, 2021

SARA L. ELLIS
United States District Judge